IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 06–cv–01765–ZLW–KMT


JOHN NASIOUS,

      Plaintiff,

v.

TWO UNKNOWN B.I.C.E. AGENTS AT ARAPAHOE COUNTY JUSTICE CENTER,
MICHAEL WHEELER, *et al.*,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

    This matter is before the court on "Defendant Wheeler's Motion to Dismiss or, in the

Alternative, for Summary Judgment" (Doc. No. 78, filed on June 4, 2008).

## FACTUAL BACKGROUND

    The following facts are taken from Plaintiff's Complaint and the parties' submissions

with respect to this Recommendation.  Plaintiff is currently incarcerated at the Sterling

Correctional Facility in Sterling, Colorado.  The events in this case relate to a time period when

Plaintiff was in custody at the Denver County Jail ("Denver Jail"),[1] pending disposition of

charges on a five-count indictment, to which he pled guilty to one count of Forgery-

---

[1] Plaintiff was also briefly held at the Arapahoe County Detention Facility.  (Compl. at
4.)

Check/Commercial Instrument, a violation of C.R.S. § 18-5-102(1)(c). On November 10, 2005, the Colorado District Court sentenced him to Community Corrections for four years. (Def. Wheeler's Mot. to Dismiss at 10-11 [hereinafter "Def's Mot."]). Instead of being transferred to a Community Corrections facility at that time, Plaintiff remained in custody at the Denver Jail after his sentencing. (Third Am. Prisoner Compl. at 4 [hereinafter "Compl."] [filed January 14, 2008]).

Defendant Michael Wheeler ("Defendant Wheeler") is an Officer with the United States Immigration and Customs Enforcement ("ICE"), and he was a Special Agent in the Denver Office of Investigations for ICE when the alleged incident occurred. (Def's Mot., Ex.A1 at 3-4.). Plaintiff has sued Defendant Wheeler in his individual capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

As an initial matter, the process of interpreting the Plaintiff's Complaint has been especially challenging for the court, given the sheer amount of varied arguments contained within it. In his Complaint, Plaintiff, a United States citizen, argues that his detention at the Denver Jail from August 3, 2005 through April 24, 2006 (the period when the ICE Detainer was in effect) constituted a "due process/illegally detained/discrimination on the basis of ethnicity Fourteenth Amendment." (Compl. at 3.). He alleges that Defendant Wheeler had no probable cause to have caused him to remain in custody for "nine-and-a-half months" at the county jail on the ICE Detainer ("Detainer"). (*Id.* at 4.).

Plaintiff presents the gravamen of his Complaint:

> Due to the erroneous immigration detainer "Nasious" has been subjected to
> various civil and constitutional right violations by Agent Michael Wheeler,
> directly or indirectly. Agent Michael Wheeler has falsified document signatures,
> and lied under penalty of perjury on his declaration dated 8-31-06 and the
> signature on the detainer file no. A97825533 is not his signature."

***

> I am an American citizen and a citizen of the state of Colorado since 1962. I am
> being held on a immigration detainer for the last nine months as an alien of
> Greece. Due to racial profiling and my greek heritage. (*Id*. at 4, 7.).

The Plaintiff argues that his due process rights were violated because the ICE detainer (which

Defendant Wheeler requested on August 3, 2005, the same day as the initial interview with the

Plaintiff) prevented him from posting bond to go to a Community Corrections facility after his

sentencing in Colorado District Court on November 10, 2005. (*Id*. at 4.).

Although Plaintiff repeatedly expresses an interest in going to a Community Corrections

facility in his Complaint, he no longer appears to be eligible for any community corrections

program. (Def's Mot., *Courtlink* State Court Docket at 3-4.). In fact, Plaintiff placed his

opportunity to go to Community Corrections into jeopardy by violating his probation, after the

detainer was removed. (*Id*.). As a consequence, on May 23, 2006, less than one month after

removal of the detainer, the state court issued a warrant for the Plaintiff's arrest for failure to

comply with the terms and conditions of his probation. (*Id*.). On February 22, 2007, the

Colorado District Court resentenced him to four years at the Department of Corrections and two

years of parole. (*Id*.).

In his motion, Defendant Wheeler states the Complaint should be dismissed because: (1) the detainer did not deprive Plaintiff of a constitutional interest; and (2) the Defendants did not violate clearly established law by lodging the immigration detainer. (Def's Mot. at 10,11.).

## PROCEDURAL HISTORY

Plaintiff's Third Amended Complaint was filed on January 14, 2008. (Compl.). Defendant Wheeler filed his motion to dismiss or for summary judgment on June 4, 2008. (Def's Mot.). No response or reply has been filed. This matter is ripe for review and recommendation.

## STANDARD OF REVIEW

*1.*    **Pro Se** *Plaintiff*

Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## 2.    *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff.  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  Further, the court is to make all reasonable inferences in the plaintiff's favor.  *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated the "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face."  127 S. Ct. at 1974.

The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  Although a plaintiff does not need to state each element of his

claim precisely, he must plead minimal factual allegations on those material elements that must be proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

"A 12(b)(6) motion must be converted into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and 'all parties . . . [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed. R. Civ. P. ] 56.'" *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)); *see also Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment).

Defendants' motion made pursuant to Rule 12(b)(6), or in the alternative Rule 56, references materials outside of the pleadings. Nevertheless, "[W]hen a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) (citing *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)). Here, Defendant moved either to dismiss or for summary judgment. Plaintiff, although given an opportunity to file a response, failed to do so. Consequently, unfair surprise is not an issue, and this court will treat Defendants' motion as one for summary judgment.

## 3. *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

The Court makes a liberal reading of Plaintiff's Complaint, and determines that he is making a claim for violations of his due process rights. His Complaint, which only lists one claim for relief, also appears to contain a claim of violation of equal protection, and intentional infliction of emotional distress. Therefore, the Court will address these additional claims as well.

### I . Due Process

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that injured plaintiffs can bring a cause of action for damages against federal officers based on violations of their constitutional rights. *Bivens* involved alleged violations of the Fourth Amendment, but the Supreme Court has also allowed *Bivens* actions for violations of the Due Process Clause of the Fifth Amendment. *Davis v. Passman*, 442 U.S. 228, 233-248 (1979).

A party's right to due process may be violated if the government deprives that person of life, liberty, or property. *See* U.S. Const. amend. V. Due process is defined as, "[t]he conduct of legal proceedings according to established rules and principles for the protection and enforcement of private rights, including notice and the right to a fair hearing before a tribunal with the power to decide the case."[2]

---

[2] Black's Law Dictionary 868 (8th ed. 2004).

An inmate, one who has already been deprived of liberty, such as the Plaintiff, can be deprived further of his liberty, such that due process is required, when (1) a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, or (2) when the government has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). Therefore, the question in Plaintiff's due process claim is whether the lodging and maintaining of the INS detainer complied with constitutional due process requirements.

### A. Filing the Detainer Did Not Violate Due Process

Defendant Wheeler's filing of the detainer upon Plaintiff's arrest did not violate due process. A review of the record does not support Plaintiff's allegations that a due process violation occurred. To the contrary, Defendant Wheeler acted in accordance with normal ICE procedures in filing the original detainer. (*Id*. at 2.). Defendant Wheeler states in his first Declaration, attached by Plaintiff in his Complaint, that he reasonably believed that the Plaintiff was in this country unlawfully based on the Plaintiff's own statements to him and the lack of valid immigration documentation. (Compl at 17.).

Plaintiff first told Defendant Wheeler that he was a native of Greece. (*Id*.; Def's Mot., Ex. A: Supplemental Declaration of Officer Michael Wheeler at 2 [hereinafter "Suppl. Decl."].). Next, Defendant Wheeler's search did not locate any DHS records showing that the Plaintiff

received a valid, unexpired, immigrant or non-immigrant visa. (*Id*.). As such, Defendant

Wheeler lodged the ICE Form 1-247. (Def's Mot. at 4, Ex.2.)[3] At some point after the lodgment

of the detainer, Plaintiff changed his story, and his father provided a copy of a State of Illinois

birth certificate to ICE to show that Plaintiff was indeed a U.S. citizen, and that he was not an

illegal alien. (*Id.*). Upon confirming this information, and after conferring with another agent,

Ronald Strong ("Strong"), Defendant Wheeler withdrew the detainer. (*Id.*). That same day,

Agent Strong executed a cancellation form and faxed it to the Denver County Sheriff, instructing

the Sheriff to cancel and remove the detainer on April 24, 2006. (Def's Mot. at 4, Ex.2:

Immigration Detainer-Notice of Action; Compl. at 15).

As noted *supra*, Plaintiff did not file a reply to Defendant Wheeler's response. As such,

the court is left with the existing record on which to base its Recommendation. At the outset, the

Plaintiff never directly discusses the answers or responses he provided to Defendant Wheeler's

questions during the August 3, 2005 interview. Plaintiff's answers were the sole and proximate

cause of Defendant Wheeler's believing that Plaintiff was an illegal alien. (Compl. at 4.). In

---

[3] The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining whether a defendant is entitled to qualified immunity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if he has, (2) "whether the right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Keylon v. City of Albuquerque*, 535 F. 3d 1210, 1218 (10th Cir. 2008) (internal citations and quotations omitted). As discussed herein, the facts in this case do not establish a constitutional violation, and therefore, the court will not address the application of the doctrine of qualified immunity to Defendant Wheeler.

particular, Plaintiff never denies he told Defendant Wheeler during the interview that he was a

Greek citizen, or a non-U.S. citizen, and never explains why he initially pretended not to speak

and understand English. (Def's Mot. Ex.1: August 22, 2005 Record of Deportable /Inadmissible

Alien).   Instead, the Plaintiff conveniently ignores any explanation about what precisely

happened during the initial interview, and does not contest, or provide a different version of,

Defendant Wheeler's factual statements regarding the interview.   Therefore, Defendant

Wheeler's sworn statement about these events will be considered as undisputed facts by this

court.   Plaintiff's only claim is that Defendant Wheeler "lied" about the Plaintiff's citizenship

status on the detainer form.[4] (*Id*.).   Lodging the the Detainer caused no deprivation of any life,

liberty, or property.   Accordingly, the filing of the Detainer under these undisputed facts was not

a violation of due process.

### B.  The Lodgment of A Detainer Does Not Constitute Custody

A detainer is "a request filed by a criminal justice agency with the institution in which a

prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be

advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993).

Filing a detainer is an informal process that generally can be done by any person who has

authority to take a prisoner into custody.   A detainer can remain lodged against a prisoner

---

[4] The fact that the Plaintiff, by his own statements, caused Defendant Wheeler to enter
incorrect information on the detainer form, is neither a lie nor an intentionally false statement by
Defendant Wheeler.

without any action being taken on it.  *See Ridgeway v. United States*, 558 F.2d 357 (6th Cir. 1977), *cert. denied*, 436 U.S. 946 (1978).

"Custody" is a term that courts have liberally construed to include not only physical incarceration, but also other "significant restraints on personal liberty."[5]  Almost all of the circuit courts considering the issue have determined that the lodging of an immigration detainer, without more, is insufficient to render someone in custody.  *Prieto v. Gluch*, 913 F.2d. 1159, 1162-64 (6th Cir. 1990) (petitioner not "in custody" where INS "detainer notice does not claim the right to take a petitioner into custody in the future nor does it ask the warden to hold a petitioner for that purpose"); *Campillo v. Sullivan*, 853 F. 2d 593, 595 (8th Cir. 1988) (where detainer "merely notifies prison officials that a decision regarding his deportation will be made by the INS at some future date. . . filing of an INS detainer, standing alone, does not cause a sentenced offender to come within the custody of the INS").  "Because there is no actual claim to the alien following the completion of his criminal sentence, there is no custody." *Galaviz-*

---

[5] *Mun. Court v. Lydon*, 466 U.S. 294, 300-01 (1984) (release on recognizance while awaiting trial satisfies custody requirement); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (release on parole satisfies custody requirement); *see, e.g.*, *Gonzalez v. Justices of Mun. Court*, 382 F.3d 1, 5 (1st Cir. 2004) (custody requirement satisfied by release on recognizance which restrained petitioner's liberty), *vacated on other grounds by Gonzalez v. Mun. Court*, 544 U.S. 918 (2005); *Simmons v. INS*, 326 F.3d 351, 356 (2d Cir. 2003) (custody requirement satisfied by INS final order against alien currently serving sentence); *Barry v. Bergen County Prob. Dep't.*, 128 F.3d 152, 160 (3d Cir. 1997) (custody requirement satisfied by community service obligation); *Wottlin v. Fleming*, 136 F.3d 1032, 1034 n.1 (5th Cir. 1998) (per curiam) (custody requirement satisfied by release to halfway house); *Misek v. Karnes*, 397 F.3d 446, 450 (6th Cir. 2005) (custody requirement satisfied by stayed sentence with no time served); *Aguilera v. Kirkpatrick*, 241 F. 3d 1286, 1291 (10th Cir. 2001) (custody requirement satisfied by final deportation order).

*Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir. 1994); *but see Vargas v. Swan*, 854 F.2d 1028,

1032-33 (7th Cir. 1988) (holding that a detainer could, under particular circumstances, be

sufficient to satisfy the custody requirement).[6]  The underlying rationale of the majority view is

that a detainer, as distinguished from other INS orders, does not place a "hold" on the person.

*Prieto*, 913 F.2d at 1164, and therefore, does not serve to establish conclusively either present or

future restraints on liberty. *Campillo*, 853 F.2d at 595.

      The mere lodgment of the Detainer by Defendant Wheeler did not constitute custody.

The Detainer, which was later withdrawn on April 24, 2006,[7]  was only a request that Denver

County authorities notify ICE prior to Plaintiff's release.  There was no final deportation order

issued, and no formal deportation proceedings were ever commenced. (Suppl. Decl. at 3.).

There was no effort by ICE to establish physical custody of Plaintiff after he served his current

prison term, or prior to commencement of his Community Corrections sentence.  *(Id.)*  Plaintiff

was already in custody at the Denver Jail awaiting the disposition of his state criminal case.

---

[6] Vargas involved an <u>excludable alien</u> rather than a deportable alien, who brought a *writ* of habeas corpus seeking an expedited determination from INS as to whether he would be excluded from the U.S. upon his release from state prison.  The Seventh Circuit stated that if a detainer essentially instructs prison officials to hold a prisoner for deportation proceedings, at the <u>end of his or her current confinement</u>, the detainer can establish custody for habeas purposes. The Vargas court remanded the case for a determination of the detainer's effect.  *Vargas*, 854 F. 3d. at 1032.

[7] The April 24, 2006 detainer cancellation form that ICE Agent Ronald Strong faxed to the Denver County Jail and the ICE Denver Office is attached as an exhibit in both Plaintiff's Complaint and Defendant Wheeler's motion.  (Compl. at 15; Def's Mot., Ex.2).

### C. The Plaintiff Had No Constitutional Right to Placement in a Community Corrections Facility

Plaintiff had no right or entitlement to be sent to Community Corrections from the Denver Jail. With respect to Plaintiff's claim that the lodgment of the detainer prevented him from being placed in community corrections, the U.S. Constitution itself does not create a protected liberty interest in a person's conditional release prior to the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Corrections Complex*, 442 U.S. 1 (1979). Therefore, the Plaintiff does not have a federal constitutional right to be placed in a community corrections facility, as opposed to a jail or a prison, prior to the conclusion of his sentence. Since there was no constitutional right, no violation of the Due Process Clause could have occurred simply because the Plaintiff was not transferred from the jail to a different facility to serve his sentence.

Further, even if a judicial officer sentences an offender to Community Corrections, the Community Corrections Board has the authority to accept or reject any offender referred for placement in a constitutional corrections program. *See* Colo. Rev. Stat. § 17-27-103(5). Plaintiff, therefore, does not have a protected liberty interest, even in the state offender system, to be housed in a Community Corrections facility.

### D. The Term of the Detainer is Irrelevant Because No Constitutional Rights Had Been Violated

There has been no showing that the term of the Detainer was improper, even accepting as true Plaintiff's allegation that he started working to undo the problems he created by lying about

14

his nationality and language which resulted in getting the detainer lodged against him. According to his Complaint, Plaintiff timely[8] tried to inform jail officials, by lodging kites and grievances, that he was a U.S. citizen and the detainer was improperly lodged against him. (Compl. at 5). The Plaintiff asserts that he also began his efforts to clarify his citizenship status directly with the INS and prison officials. (Compl at 3.). Plaintiff also stated that his family tried to file grievances through the proper channels. Plaintiff contends that,

> Deputy Fisher, Detainer Operations Denver County Jail in connection with BICE, was contacted 15 times and ignored [Plaintiff's] kites grievances, concerns and requests about [Plaintiff's] concerns with this detainer. Captain Blair answered Nasious grievances 'unfounded.' (Compl at 4.).

The Plaintiff further asserts, "Agent Michael Wheeler, Agent Devalue Cummings are special agents for B.I.C.E at the Denver County Jail and Arapahoe County Jail, they both had been contacted on numerous occasions by [Plaintiff's] family members and failed to respond to any phone calls or letters regarding this detainer." (*Id.* at 5.). Plaintiff also provides a February 13, 2006 letter sent to him from the U.S. Department of Justice, Executive Office for Immigration Review, Immigration Court, informing him that the Immigration Court had no record of any immigration case opened against him. (Compl. at 14.).

For purposes of this Recommendation, the court accepts these facts as undisputed. In August 2005 Plaintiff told Defendant Wheeler that he was a native of Greece. (Suppl. Decl. at ¶6). Defendant Wheeler lodged the ICE Form 1-247 because he could not locate any DHS

---

[8] The Complaint does not specifically state when any of Plaintiff's efforts to recant his original lie began.

records showing that Plaintiff received a visa. (Def's Mot. at 4, Ex.2.). In November 2005, Plaintiff was sentenced to four years incarceration, which the state court held to be served in a community corrections facility. Some time thereafter, Plaintiff began attempts to allow him to transfer to community corrections. Defendant Wheeler withdrew the detainer, upon confirming the validity of the State of Illinois birth certificate sent by Plaintiff's father which showed that he was a U.S. citizen. (Suppl. Decl. at ¶ 15-16). A cancellation form was executed and faxed it to the Denver County Sheriff, instructing the Sheriff to cancel and remove the detainer. (*Id*. at ¶ 16-17). The lodgment of the Detainer by Defendant Wheeler did not constitute custody. The Detainer was only a request that Denver County authorities notify ICE prior to Plaintiff's release. (Suppl. Decl. at 3.). Plaintiff had no right, entitlement, or protected liberty interest in being sent to Community Corrections from the Denver Jail. Accordingly, Plaintiff has not shown that was deprived of a liberty without due process during the short time period between when he started trying to correct the lie he had originally told and the removal of the Detainer (the ICE Detainer was lodged on August 3, 2005 and withdrawn on April 24, 2006).

## II. Equal Protection

If the Court liberally interprets Plaintiff's due process claim as an equal protection claim, such a claim would still fail. "The equal protection clause provides that '[n]o state shall. . .deny to any person within its jurisdiction the equal protection of the laws.'" *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (quoting U.S. Const. amend.

XIV, § 1). "Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Id*. (quoting *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432 (1985)).

In this case, the Plaintiff fails to make to make an adequate showing that similarly situated persons to himself were treated differently.  Instead, the Plaintiff only offers the cursory conclusions that he was illegally detained because of "discrimination on the basis of ethnicity Fourteenth Amendment," and that "[he was] being held on a immigration detainer for the last nine months as an alien of Greece.  Due to racial profiling and [his] Greek Heritage."  (Compl. at 3, 7.)  The court has accepted as an unrefuted fact that Defendant Wheeler learned of Plaintiff's foreign birth directly from the Plaintiff's specific statement that he was born in Greece.  After checking for a valid alien visa or other immigration documents, the Plaintiff, like other foreign nationals without paperwork, was considered presumptively subject ro removal proceedings and a detainer was filed.  (Suppl. Decl. at ¶ 7-8 ).  Defendant Wheeler, in his Supplemental Declaration, declares:

> At all times relevant to my contact with and investigation of Mr. Nasious, I complied in good faith with all DHS and ICE policies and procedures as well as clearly established law.  At no time did I ever intentionally violate Mr. Nasious's constitutional rights. (Suppl. Decl. at ¶ 19-20).

There is nothing in the record that shows that he was treated differently from a similarly situated person.  Therefore, Plaintiff has not shown that there is any disputed issue as to any material fact necessary to resolve this equal protection claim, and Defendant Wheeler is entitled to judgment as a matter of law.

### III. Intentional Infliction of Emotional Distress

Lastly, the Plaintiff claims that Defendant Wheeler's lodgment of the Detainer was outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. (Compl. at 5-6.).   In Colorado, "[t]he elements of outrageous conduct are: (1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros*. Co., 70 P.3d 495, 499 (Colo. App. 2002).  The first element, extreme and outrageous conduct, is satisfied if the conduct goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965). The court views the totality of the circumstances in determining whether the conduct at issue is extreme and outrageous.  *Kirk v. Smith*, 674 F. Supp. 803, 811 (D.Colo.1987); *Spulak v. K Mart Corp*., 664 F. Supp. 1395, 1397 (D. Colo. 1985).  "The question of whether certain conduct is sufficiently outrageous is ordinarily a question for the jury."  *Meiter v. Cavanaugh*, 40 Colo. App. 454, 580 P.2d 399, 401 (1978).  "But it is for the court to determine, in the first instance, whether reasonable men could differ on the outrageous issue." *Blackwell v. Del Bosco*, 35 Colo. App 399, 536 P.2d 838 (1975), *aff'd*, Colo., 558 P.2d 563 (1976).

Here, the record does not support a finding that the Defendant Wheeler's conduct was outrageous. This Court finds that no reasonable man could make a finding of outrageous conduct based on the undisputed facts regarding the actions of Defendant Wheeler.  Based on the record,

and accepting Plaintiff's allegations as true, there are no facts alleged which show that Defendant Wheeler's conduct was extreme and outrageous conduct, or that he acted recklessly with the intent of causing Plaintiff severe emotional distress. The undisputed facts show Defendant simply followed standard procedures after the Plaintiff lied to him about Plaintiff's nationality. With nothing more than Plaintiff's conclusory allegations that Defendant Wheeler's intended to inflict emotional distress, reasonable people would not disagree that Defendant Wheeler's conduct was neither atrocious nor intolerable.

Therefore, this Court recommends that Defendant Wheeler be entitled to judgment as a matter of law on any claim of intentional infliction of emotional distress.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendant Wheeler's "Motion to Dismiss or, in the Alternative, for Summary Judgment" (Doc. No. 78) be **GRANTED**.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d

1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of January, 2009

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge